THE CITY OF MUNCIE, INDIANA, PAUL J. COOLEY, MAYOR OF THE CITY OF MUNCIE, INDIANA, AND BOARD OF PUBLIC WORKS AND SAFETY OF THE CITY OF MUNCIE; CHARLES PRICE, HERBERT E. SCHUCH, DARREL PECKINPAUGH, MEMBERS OF THE

BOARD OF PUBLIC WORKS AND SAFETY OF THE CITY OF MUNCIE, INDIANA; AND CHARLES F. PRICE, CONTROLLER OF THE CITY OF MUNCIE, INDIANA; CORDELL H. CAMPBELL, CHIEF OF POLICE OF THE CITY OF MUNCIE, INDIANA; AND MUNCIE POLICE AND FIRE MERIT COMMISSION, JOSEPH LYONS, GLENN STEPLETON, JAMES SNYDER, HAROLD SHICK, MICHAEL R. DAGUE, CORDELL H. CAMPBELL AND RONALD TRUE, MEMBERS OF THE MUNCIE POLICE AND FIRE MERIT COMMISSION, AND RONALD TRUE, CHIEF OF THE MUNCIE FIRE DEPARTMENT *v.* MARVIN E. CAMPBELL.

[No. 472A209. Filed April 17, 1973. Rehearing denied May 11, 1973. Transfer denied September 28, 1973.]

*Darrel K. Peckinpaugh,* City Attorney, of Muncie, for appellant.

*Wayne J. Lennington, Lennington & Lennington, Richard A. Dailey, Slagle & Shirey,* of Muncie, for appellee.

SULLIVAN, J.—The basic issue before us concerns whether a police officer who has been suspended from duty by the Chief of Police pursuant to IC (1971), 19-1-14-19, Ind. Ann. Stat. § 48-6278 (Burns 1972 Supp.) may be subjected to further disciplinary action by the Police and Fire Merit Commission pursuant to the same statutory provision.

The Delaware Superior Court reviewed the cause in light of the following stipulated facts: On December 1, 1971, plaintiff-appellee Marvin E. Campbell, while on duty as a police officer in the city of Muncie, was involved in an altercation with another Muncie police officer in the parking lot adjacent to the Muncie City Hall. Officer Campbell on December 6, 1971 was notified by the Chief of Police of the City of Muncie that he had been suspended for a period of ten days without pay as a result of the altercation. The Muncie Police and Fire Merit Commission notified Officer Campbell on December 11, 1971 that charges had been filed against him and that a hearing upon those charges had been set from which date Campbell obtained a continuance. The hearing was reset and was held on January 3, 1972 before the Merit Commission, at which hearing Officer Campbell was ordered suspended for 113 days without pay, reduced in rank to a patrolman, and placed upon probation for 252 additional days.

Officer Campbell then brought this action in the Delaware Superior Court, seeking to enjoin the defendants as public officials and members of the Merit Commission for the City of Muncie, from enforcing the disciplinary action ordered.

The court below granted the injunctive relief from which defendants appeal.

The basis of the trial court's determination is found in its Decree which reads in part:

> "Had the legislature intended to permit an officer to be subject to punishment for the same offense by both the chief and the commission, it could have and should have so stated in the statute. If, on the other hand, the words 'all other dismissals, suspensions . . .' are taken to apply to a case where the chief has already imposed a penalty, the offender would be subject to multiple penalties for the same offense. Such an interpretation of the statute would be strained indeed, and inimical to any common-sense interpretation of legislative intent.
>
> A careful reading of this statute convinces the Court that it confers on the chief, who is in most direct contact with members of the Department and in the best position to be informed as to any possible violations, the necessary power and discretion to dispose of those offenses which, in his judgment, do not require the attention of the commission, in which case he then advises the commission of his actions; or he may defer to the commission for prosecution and disposition in any given case."

At issue is the interpretation of the following statute which concerns only the City of Muncie:[1]

> "The chief of police or the chief of the fire department may impose reprimands and suspensions from duty without pay for a period not exceeding ten (10) days. If such action is taken by a chief, such chief shall within forty-eight (48) hours thereafter notify the commission in writing of such action and the reasons therefor. All other dismissals, suspensions and punishments of members of the police or fire department shall be by the commission and shall be for cause, and under the same rules of procedure provided by laws pertaining thereto for cities of the second class; except that wherever in such laws, reference is made to commissioners of public safety, board of public works and safety, board of metropolitan police commissions, board of metropolitan police and fire department, or board, it shall be construed, for the purpose of this act to refer to the

---

1. The application of the provision in question is governed by IC 1971, 19-1-14-1, Ind. Ann. Stat., § 6260 which is restricted to Cities of the Second Class located in counties of not less than 128,000 nor more than 138,000, according to the last preceding U.S. Census.

commission in lieu thereof." (IC 1971, 19-1-14-19, Ind. Ann. Stat., § 48-6278 (Burns 1972 Supp.))

Officer Campbell and the court below interpret this statute to contain mutually exclusive disciplinary procedures, i.e., that no officer may be subject to both the ten day suspension by the Police Chief *and* subsequent disciplinary action by the Commission. Appellants, of course, contend that they are not forbidden to impose further disciplinary action upon an officer, and that to restrict them requires a strained reading of the statute in contravention of legislative intent.

While it is axiomatic that penal statutes of the nature here involved must be strictly construed (*Beesley* v. *State* (1941), 219 Ind. 239, 37 N.E.2d 540), the foremost object of construing a statute is to determine and carry out the true intent of the Legislature. *Thompson* v. *Thompson* (1972), 259 Ind. 266, 286 N.E.2d 657, 661.

In here determining the legislative intent:

1.  We must look to the object or purpose sought by the statute. *State* v. *Gilbert* (1966), 247 Ind. 544, 219 N.E.2d 892.

2.  We must examine the language of the statute itself. *State ex rel. Roberts* v. *Graham* (1953), 231 Ind. 680, 110 N.E.2d 855.

3.  We must consider the intent of the Legislature as it may be expressed in similar statutes which have the same purpose or object, i.e., statutes which are *in pari materia.* See *State ex rel. State Bd. of Tax Commissioners* v. *Daviess Circuit Court* (1967), 249 Ind. 580, 230 N.E.2d 761, and 2 Sutherland on *Statutory Construction,* § 5202 (3d ed. 1943).

4.  We may consider the judicial decisions of other jurisdictions in dealing with similar provisions.

The statute in question was amended in 1967 by the addition of the first two sentences and the words "all other" beginning the third sentence. This amendment enabled the Police Chief to summarily suspend officers for a short period of time. It is our opinion that the salutary

purpose of this amendment is two-fold: First, to allow expeditious treatment of minor infractions; and secondly, to allow immediate suspension of an officer who is suspected of more serious misconduct, in order to remove him from the responsibilities of his position in the interval between the occurrence of the misconduct and the full hearing by the Commission. The necessity of removing a serious offender from his sensitive position of authority pending a fair hearing cannot be denied. As appropriately stated in *McElroy* v. *Trojak* (1959), 189 N.Y.S. 2d 824, 826-827:

> "Police officers occupy a unique status in the maintenance of law and order in a community and the public interests would be seriously jeopardized in the case of a police officer if he were allowed to be incompetent or charged with misconduct and it was required that he be retained in office pending the hearing of the charges or the preparation and service of the charges. In the case of police officers the power to temporarily and summarily suspend in the case of misconduct or incompetency is absolutely indispensable."

Adoption here of the interpretation made by the trial court and as espoused by appellee Campbell would permit a Chief of Police, by issuing a mere reprimand or a one day suspension, to completely circumvent the statutory authority of the Commissioners of Public Safety to discipline police officers for serious offenses.

The language of the statute itself indicates that the Legislature contemplated that the police chief's suspension would be supplemental to, rather than in lieu of the other punishments therein provided for. The statute requires that in the event of a suspension by a chief, the chief must within 48 hours thereafter notify the Commission in writing of such action and the reasons therefor. This mandate discloses that the Legislature anticipated further action by the Commission.

The language to the effect that "all other dismissals, suspensions and punishments . . . shall be by the commission" is interpreted by Officer Campbell and the trial court as exclusionary, i.e., as dealing not with "all other *punishments* . . ." but rather with "punishments for all *other acts* of mis-

conduct . . .". The language is truly exclusionary, but it distinguishes one type of punishment from another, and not one incident of misconduct from another. In this regard it is just as important to recognize what a statute does not say as it is to recognize what it does say. We cannot base our interpretation upon a paraphrase of the Legislature's words. We must assume that the Legislature consciously declined to use the phrase "punishments for all other incidents . . .", and not that they imperfectly expressed that which Officer Campbell contends is their true intention.

Finally, we view as consistent with the position taken by us, the judicial precedent in other states which have recently considered the question. There is certainly nothing inherently, or even inferentially, unfair in permitting a summary suspension of limited duration followed by a hearing before a disciplinary body which is authorized to impose additional suspension or dismissal. Such course of action has been approved in those jurisdictions which our research discloses have treated the question within the past fifteen years. *McKeithen* v. *City of Stamford* (1962), 149 Conn. 619, 183 A. 2d 280; *Foreman* v. *Civil Service Commission of the City of Chicago* (1955), 7 Ill. App. 122, 129 N.E.2d 245; *McElroy* v. *Trojak, supra;* and *Kramer* v. *City of Bethlehem* (1972), 5 Pa. Cmnwlth. 139, 289 A. 2d 767.

Thus, when we view the salutary purpose of the Muncie statute, the express language of the statute, the evidence of legislative intent provided by the *pari materia* statute, and the decisions of our sister states, it is our inescapable conclusion that the two courses of disciplinary action provided for in the Muncie statute are supplemental and are not mutually exclusive.

The judgment of the Delaware Superior Court is therefore reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Buchanan, P.J. and White, J., concur.

NOTE.—Reported at 295 N.E.2d 379.