Steven L. NEWVILLE, Appellant
(Petitioner Below),

v.

STATE of Indiana, Appellee
(Respondent Below).

No. 02A04–9004–PC–163.

Court of Appeals of Indiana,
Fourth District.

Feb. 13, 1991.

Transfer Denied April 11, 1991.

Susan K. Carpenter, Public Defender, Jeffery A. Evans, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

CHEZEM, Judge.

### Case Summary

Petitioner–Appellant, Steven L. Newville, appeals from the denial of his Petition for Post–Conviction Relief. We affirm.

### Issue

Petitioner presents two (2) issues for our review, which we consolidate and restate as follows:

Whether the post-conviction court erred in determining that the trial judge "was not biased or prejudiced" against Petitioner.

### Facts and Procedural History

On February 10, 1981, the Allen County Prosecutor's Office filed an Information, which charged Petitioner with Rape (class A felony) and Robbery (class B felony). On March 27, 1981, another Information was filed, which charged Petitioner with Rape (class A felony). Following his arrest, Petitioner confessed to all three of the crimes (which was tape recorded).

On June 15, 1981, following his plea of guilty, Petitioner was sentenced to two terms of twenty years on two separate charges of Rape (class A felonies). The convictions and sentences were vacated following a successful post-conviction proceeding on February 1, 1985.

On April 11, 1985, Petitioner was tried before Judge Alfred A. Moellering for the rape of C.D. The jury found him guilty of Rape (class A felony) and Robbery (class B felony). Several weeks later, Petitioner was again tried before Judge Moellering for the rape of L.C. The jury found him guilty of Rape (class B felony).

With respect to the second trial, Petitioner was allowed to address Judge Moeller-

ing (at the request of defense counsel and outside the presence of potential jurors) before jury selection began. He sought to have new counsel appointed or time to retain private counsel. The request was denied by the Judge.

Thereafter, Judge Moellering sentenced Petitioner to twenty years for Rape and ten years for Robbery in the case involving C.D. In the case of L.C., Petitioner was sentenced to fifteen years for Rape. All sentences were ordered to run consecutively. Petitioner's counsel objected to the imposition of an aggregate sentence in excess of the forty years imposed under the prior plea agreement. The objection was overruled. On appeal, the Indiana Supreme Court affirmed the convictions but "remanded to the trial court for resentencing to a total aggregate term of imprisonment not to exceed 40 years." *Newville v. State* (1987), Ind., 511 N.E.2d 1047, 1049. In its opinion, the Court cites the rule that "a defendant who has successfully challenged his guilty plea may not be sentenced to a total executed time greater than he received in the original plea agreement." [1]

On October 14, 1988, Petitioner filed a *pro se* Petition for Post–Conviction Relief, which alleged that he had been denied effective assistance of counsel and due process of law. Several days later, Public Defender Jeffery A. Evans entered an Appearance on behalf of Petitioner. Petitioner had previously been represented at trial and on appeal by Public Defender Bruce S. Cowen. Evans then amended the Petition by adding a charge that the trial judge should have recused himself *sua sponte* "after evidencing a personal bias and prejudice against Newville."

Petitioner also filed a Motion for Change of Venue From [the] Judge. The motion was granted and the case went to Judge John F. Surbeck, Jr., who held a post-con-

viction hearing on July 21, 1989. After taking the matter under advisement, he denied the Petition.

Other facts will be added as needed.

*Discussion and Decision*

■■■ At a post-conviction hearing the petitioner has the burden of proving he is entitled to relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1, § 5; *Jones v. State* (1989), Ind., 544 N.E.2d 492, 493–494. On appeal, this Court will not set aside the post-conviction judgment unless the evidence is without conflict and leads solely to a result different from that reached by the post-conviction court. *Id.; Propes v. State* (1990), Ind., 550 N.E.2d 755, 758. As noted by the Indiana Supreme Court:

> Petitioner has the burden of proof and stands in the shoes of one appealing from a negative judgment. The trial judge, as the trier of facts, is the sole judge of the weight of the evidence and the credibility of the witnesses. It is only where the evidence is without conflict and leads to but one conclusion, and the trial court has reached an opposite conclusion, that the decision will be disturbed as being contrary to law.

*Young v. State* (1984), Ind., 470 N.E.2d 70, 71–72.

Petitioner argues that the trial court committed fundamental error when Judge Moellering failed to recuse himself *sua sponte* after "expressing extreme bias and prejudice" against Petitioner. He also argues the post-conviction court erred by denying his Petition. We disagree.[2]

■■■ We first note the law presumes that a judge is unbiased and unprejudiced in the matters before him. *Jones v. State* (1981), Ind.App., 416 N.E.2d 880, 881. A

---

1. Ind. Post–Conviction Rule 1, § 10, has been amended to allow greater sentences under certain circumstances. The amendment only applies to petitions filed after January 1, 1986. *Newville*, 511 N.E.2d at 1049; *Tolson v. State* (1986), Ind., 493 N.E.2d 454, 455.

2. We are not persuaded the post-conviction court applied an "improper legal standard" in

evaluating the claim that the judge was "biased and prejudiced" against Petitioner. We have reviewed the cases that have been cited, and they do not support the assertions of Petitioner. The cases do *not* state that it is improper for the reviewing court to consider "the totality of the trial record" in assessing claims of "bias and prejudice."

judge has the discretionary power to disqualify himself *sua sponte* whenever any semblance of judicial bias or impropriety comes to the judge's attention. *Smith v. State* (1985), Ind., 477 N.E.2d 857, 864. Additionally, where a judge has actual prejudice in a case, justice requires that he disqualify himself. *Nelson v. State* (1982), Ind.App., 436 N.E.2d 1153, 1155. The record must show actual bias and prejudice against the defendant before a conviction will be reversed on the ground that the judge should have been so disqualified. *Smith*, 477 N.E.2d at 864.

With respect to the alleged "bias and prejudice," Petitioner first cites a conversation that he had with Judge Moellering which occurred immediately before jury selection in the second trial (and outside the presence of all potential jurors):

MR. COWEN: All right, now this is a point at which you can tell the judge your feelings here. You have indicated that you—you would like to ask for a change of Public Defender, is that correct?

DEFENDANT: Yes.

MR. COWEN: Or the ability to see of you can get private counsel, is that correct?

DEFENDANT: Yes.

MR. COWEN: And is there anything else then that you want to bring to the attention of the court?

DEFENDANT: None, other than the reasons.

MR. COWEN: All right, do you want to go ahead and tell the reasons to the court?

DEFENDANT: Well, it—my request would have been sooner except that I had no—no way of doing so. The first time that I seen Mr. Cowen was yesterday, the day before trial, and—

THE COURT: Well, now, you saw him a couple of weeks ago. You had another trial.

DEFENDANT: That was—right, right. I'm concerning this trial, the first time I seen him was yesterday, the day before, and I—I feel that I—I need counseling. I need better counsel and I

need a chance to get an attorney, somewhere I can do something myself.

THE COURT: You know you're not going to hire counsel, Mr. Newville. You don't have the first dime to pay for counsel.

DEFENDANT: Well, then, can I be appointed another—

THE COURT: What?

DEFENDANT: May I be appointed another counsel.

THE COURT: You've already gone through at least two appointments.

DEFENDANT: One backed out because of the conflict of interest.

THE COURT: Because you convinced him of a conflict of interest.

DEFENDANT: No, no, I had nothing to do with it, Your Honor. I didn't even—

THE COURT: That's not the way he reported it to me.

DEFENDANT: Oh, no, no, I had no—I had no knowledge of it until it was—

THE COURT: Well, it doesn't make any difference. Your not entitled to counsel of your choice. You're—

DEFENDANT: If it's not satisfactory? If it's not satisfactory?

THE COURT: You don't make that determination, Mr. Newville. You have been fooling around with the court system now for all these years. You sat down there for three years, then you come around and get a post conviction relief petition, and get it all set aside. You demand speedy trials. You demand jury trials. We've gove [sic] over seventy jurors setting [sic] over there waiting to try you this morning, and then on the morning of the trial you come, "Oh, judge, I—"

DEFENDANT: Your Honor, I'm not fooling around with the courts and I'm doing all I can to work with the court. I couldn't request this any sooner because I didn't see my lawyer before then and the other day we made a phone call and—

THE COURT: You have written—you have written many, many times, Mr.

Newville. I have seen your penmanship.

DEFENDANT: I'm sorry, I don't believe so. I don't remember. I don't recall any—

THE COURT: Not to me but to the State Public Defender.

MR. COWEN: Did you try to call me at any time?

DEFENDANT: I never knew your phone number, no.

MR. COWEN: Did you have any special—special new information that you thought ought to be brought to my attention?

DEFENDANT: I would have thought some information should have been brought to my attention. I—

THE COURT: What should have been brought to your attention besides going to trial here?

DEFENDANT: My defense. My defense.

THE COURT: What is your defense?

DEFENDANT: As of now, I have nothing.

THE COURT: You never have had anything. Mr. Newville, you are going to trial. You have had your opportunity to make your record so you can take another appeal when you get down there, which is exactly what you want to do. You are abusing the system, sir, and I'm not going to tolerate it. You're going to trial today.

DEFENDANT: Fine, thank you.

THE COURT: We'll adjourn and resume to pick the jury when they're ready.

■ Petitioner first argues that "the judge pre-determined [his] guilt." In support, he relies upon the judge's statement that "you never have had anything [for a defense]." When viewed in context, this statement does *not* indicate a pre-determination of guilt by Judge Moellering. This was the second trial. The judge had presided at the first trial as well, where the jury had found Petitioner guilty as charged. We interpret the statement as referring to the lack of a defense in the first trial, not the second one. Judge Moellering never stated or indicated his opinion as to whether the Petitioner was guilty of the charges in the *second* trial.

■ Petitioner next argues that "bias and prejudice" is established because the judge's statements indicate a desire to punish him for asserting his rights. He relies heavily upon the judge's comment that "[y]ou have been fooling around with the court system now for all these years." In his brief, Petitioner states:

The abuse [of the system], in the judge's view, continued when Newville asserted his constitutional right to trial by jury. The abuse, in the judge's view, was furthered when Newville asserted his constitutional right to a speedy trial. Under the judge's pre-conceived guilt assessment, any assertion of the right to an attorney was merely a continuation of the abuse. After all, as the judge stated, Newville needed no assistance from an attorney other than to be notified of his trial date.

With respect to this argument, the judge's statements have been mischaracterized by Petitioner. Judge Moellering does *not* state that Petitioner was abusing the judicial system by asserting his constitutional rights. Instead, he mentioned these rights to emphasize the seemingly inconsistent positions being taken by the Petitioner. On the one hand, Petitioner demands speedy jury trials, and then on the day of the trial he suddenly requests new counsel (which would effectively delay the trial if granted).

In addition, Petitioner made absolutely *no* attempt to notify his counsel or the trial court about obtaining new counsel until the morning of trial just before jury selection. But he boldly stated to the judge that "I'm doing all I can to work with the court." When pressed on this matter, Petitioner stated that he did not know his counsel's phone number (even though that counsel represented him at the first trial just two weeks earlier). In his comments, the judge also noted that he had seen the "penmanship" of Petitioner, which suggested that he could have written a letter requesting new counsel before the second trial.

■ There is another mischaracterization which we cannot ignore. Petitioner states that "[a]fter all, as the judge stated, Newville needed no assistance from an attorney other than to be notified of his trial date." We have reviewed the part of the record cited in support, and find no such statement by Judge Moellering. However, we assume that Petitioner is referring to the judge's question—"[w]hat should have been brought to your attention besides going to trial here?" This question followed Petitioner's statement that he "thought some information should have been brought to my attention." It also followed the defense counsel's question as to whether Petitioner had any "special new information" to bring to his attention (which indicates the two had discussed the case previously). When viewed in context, it is clear the judge was *not* implying that the only assistance defense counsel should render is to inform the Petitioner of his trial date.

■ Petitioner next argues that "bias and prejudice" exists here because the judge denied his Motion to Suppress. That motion requested the court to suppress the statement he had given to police on the grounds that it was obtained in violation of *Miranda*. As defense counsel stated during the suppression hearing, "[the police officer] did not go far enough to advise this man in his condition of his legal rights, and he was in such a condition that, therefore, he did not fully understand his legal rights ... and, therefore, the statement that he gave was not voluntary." In support of his argument, Petitioner cites the following colloquy between himself, the prosecutor (Mr. Chambers), and Judge Moellering:

CHAMBERS: Would you tell me, please, in court, under oath, the source of your drugs in 1980?

DEFENDANT: No.

CHAMBERS: Your Honor, I have a—I object to the defendant refusing to answer a legitimate question under oath in his own motion to quash hearing.

THE COURT: Well, he's certainly at liberty to refuse on the grounds that it might tend to incriminate him, which I'm sure that he's thinking about, and it also destroys any basis whatsoever for the alleged defense that he's raised, so he has that option. He's very familiar with his rights. Aren't you, Mr. Newville?

DEFENDANT: Yes, I am.

Petitioner argues that this colloquy shows "the judge became the prosecutor's investigating officer, demanding evidence of previously unknown and uncharged crimes." He then states, "[a] judge's prosecutorial stance against a defendant is evidence of personal bias."

■ Whether the judge committed legal error is irrelevant. There is no indication the alleged error was the result of "bias or prejudice." Also, we note the mere fact of legal error, without more, is not enough to overcome the presumption that a judge is unbiased and unprejudiced in the matters before him.[3]

In addition, Petitioner has once again mischaracterized the judge's statements. The judge never "demand[ed]" that Petitioner reveal his source for drugs. Indeed, the colloquy in question shows the judge stated "it's your choice."

■ Petitioner's last argument has to do with the sentence he received from Judge Moellering. He argues that the judge was "biased and prejudiced" because "[he] imposed a clearly illegal sentence in

**3.** We also note that portions of the suppression hearing were previously reviewed on the direct appeal by the Indiana Supreme Court. The question there was "whether the trial court erred by admitting statements made by appellant following arrest." After reviewing the record, the Court stated "[a]ppellant's evidence that he was under the influence of drugs was contradicted by the testimony of Detective Kiessling and this testimony was sufficient to support a finding that appellant knowingly, intelligently, and voluntarily waived his right and

that his statement was voluntary." *Newville*, 511 N.E.2d at 1051. The judge's "bias and prejudice" was not an issue in the prior appeal, although we would have expected it to have been raised by the Court *sua sponte* if this alleged error was as "fundamental" as Petitioner claims. We note that it is the primary issue in the present appeal, along with the subsumed issue of ineffectiveness of trial and appellate counsel (allegedly ineffective by not moving for a change of judge at trial and then failing to raise the issue during the prior appeal).

excess of Newville's original plea agreement." Once again, there is no indication this error was the result of "bias and prejudice."

We will not reverse the post-conviction court's ruling on the Petition. Many of the judge's statements do not evidence "bias and prejudice," as claimed by Petitioner. Other statements are subject to different interpretations. Also, because we find the evidence here to be "conflicting," we will not reverse. The law is clear that "we will not set aside the post-conviction judgment unless the evidence is without conflict and leads solely to a result different from that reached by the post-conviction court." *Jones*, 544 N.E.2d at 493–494.

Affirmed.

MILLER, P.J., concurs.

SULLIVAN, J., concurs in result.