Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 22 2014, 9:07 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DANIELLE L. GREGORY**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CONWAY JEFFERSON, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1309-PC-748 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Michael S. Jensen, Magistrate
Cause No. 49G20-0402-PC-18942

**April 22, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Conway Jefferson was convicted of dealing in cocaine, as a Class A felony, following a jury trial. On direct appeal, this court affirmed his conviction. See Jefferson v. State, 891 N.E.2d 77 (Ind. Ct. App. 2008), trans. denied ("Jefferson I"). Jefferson subsequently petitioned for post-conviction relief, which the post-conviction court denied. He now appeals, challenging the post-conviction court's judgment, and he raises the following issues for our review:

1. Whether the post-conviction court erred when it denied his motion for change of judge.

2. Whether he was denied the effective assistance of trial counsel.

3. Whether he was denied the effective assistance of appellate counsel.

4. Whether the trial court erred when it denied his motion for discharge under Criminal Rule 4(C).

We affirm.

## FACTS AND PROCEDURAL HISTORY

This court set out the facts and procedural history in Jefferson I as follows:

Indianapolis Police Officer Jeffrey McPherson received information from a confidential informant and a DEA document from one of the detectives in his office advising that Jefferson was selling cocaine in Indianapolis. On February 2, 2004, Officer McPherson performed a trash pull at Jefferson's residence. Specifically, Officer McPherson pulled the trash from directly behind Jefferson's residence in an area "consistent with a trash collection agency picking it up" on a collection day when trash cans placed out by other residents in the neighborhood "were lined up all down the alley" for trash collection. Transcript at 44. Officer McPherson searched the trash and found "a whole bunch of baggies with the corners tore out of them" and marijuana, specifically "a couple of roaches, which is the end of a marijuana cigarette that had been smoked." Appellant's Appendix at 115.

Based upon this information, Officer McPherson filled out a probable cause affidavit. On February 3, 2004, Officer McPherson sought and received a search warrant for Jefferson's residence. That same day, the police executed the search warrant and recovered marijuana, sixty-six grams of crack cocaine, a "weight scale box," sandwich bags, and handguns. Transcript at 421. During a patdown search of Jefferson, the police recovered multiple baggies of cocaine.

On February 6, 2004, the State charged Jefferson with dealing in cocaine as a class A felony and possession of cocaine as a class C felony. On February 18, 2004, the search warrant and probable cause affidavit were filed with the trial court clerk. On April 15, 2005, Jefferson filed a motion to suppress evidence seized pursuant to the search warrant alleging that the affidavit was unreliable and failed to establish probable cause. After a hearing, the trial court denied the motion. On July 28, 2006, Jefferson filed another motion to suppress evidence seized pursuant to the search warrant. On September 26, 2006, Jefferson filed an addendum to his motion and argued that Officer McPherson did not have an articulable, individualized suspicion to support a search of the trash and that the results of the trash search could not be used to provide probable cause for the search warrant. After a hearing, the trial court denied the motion.

At trial, Jefferson represented himself pro se and did not testify. During closing argument, Jefferson stated that he had been a drug user but had changed his life and admitted that the police had found drugs on him. The prosecutor objected on the basis that Jefferson was testifying, and the trial court sustained the objections.

After the jury trial, the jury found Jefferson guilty as charged. The trial court entered judgment of conviction only on the offense of dealing cocaine as a class A felony due to double jeopardy concerns. The trial court sentenced Jefferson to fifty years in the Department of Correction.

Jefferson v. State, 891 N.E.2d 77, 79-80 (Ind. Ct. App. 2008), trans. denied.

On direct appeal, we addressed two issues, namely: whether the trial court abused its discretion by admitting the evidence obtained during the search; and whether the trial court failed to permit Jefferson to present a defense. We affirmed his conviction. Jefferson thereafter filed a petition for post-conviction relief, which the post-conviction court denied following a hearing. This appeal ensued.

3

## DISCUSSION AND DECISION

The petitioner bears the burden of establishing his grounds for post-conviction relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); Harrison v. State, 707 N.E.2d 767, 773 (Ind. 1999). To the extent the post-conviction court denied relief in the instant case, Jefferson appeals from a negative judgment and faces the rigorous burden of showing that the evidence as a whole "'leads unerringly and unmistakably to a conclusion opposite to that reached by the [lower] court.'" See Williams v. State, 706 N.E.2d 149, 153 (Ind. 1999) (quoting Weatherford v. State, 619 N.E.2d 915, 917 (Ind. 1993)). It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that its decision will be disturbed as contrary to law. Bivins v. State, 735 N.E.2d 1116, 1121 (Ind. 2000).

## Issue One: Change of Judge

Jefferson first contends that the post-conviction court erred when it denied his motion for change of judge. In his pro se motion, Jefferson alleged that the post-conviction court judge was "personally biased or prejudiced" against Jefferson because he had: permitted the State to withhold discovery; denied Jefferson the right to subpoena key witnesses; and held "animosity" against Jefferson because of his "prior disruptive behavior." Appellant's App. at 66. On August 31, 2009, the post-conviction court granted Jefferson's motion and ordered the parties to strike from a panel of judges pursuant to Trial Rule 79. On September 8, Jefferson mailed his motion striking one of the judges from the panel. But the State did not timely file a motion to strike one of the

4

remaining two judges, and Jefferson did not make any further motions to strike. Accordingly, pursuant to Trial Rule 79(F), after Jefferson filed his "Motion for the Court to Advise Petitioner of Special Judge," the trial court denied that motion and resumed jurisdiction over Jefferson's post-conviction petition.

Under Post-Conviction Rule 1(4)(b), a "petitioner may request a change of judge by filing an affidavit that the judge has a personal bias or prejudice against the petitioner." The rule requires the judge to examine the affidavit, treat the historical facts recited in the affidavit as true, and determine whether these facts support a rational inference of bias or prejudice. Lambert v. State, 743 N.E.2d 719, 728 (Ind. 2001). A change of judge is neither automatic nor discretionary, but calls for a legal determination by the trial court. Id. However, we presume that a judge is not biased against a party. Id.

In its order denying Jefferson's "Motion for the Court to Advise Petitioner of Special Judge," the post-conviction court found that Jefferson had not timely filed his first motion to strike and had failed to file a final motion to strike, which was required after the State failed to strike one of the panel members. Indeed, Trial Rule 79(F) provided[1] in relevant part:

> (2) Striking From Panel. In an adversary proceeding, each party shall be entitled to strike one judge from the panel. . . . The moving party shall be entitled to strike first, and shall have seven (7) days from the day the clerk mails the panel to the parties to strike. The nonmoving party . . . shall have seven (7) days from the date of the first strike to make the final strike.

---

[1] Trial Rule 79 has been amended effective January 1, 2013, and no longer includes a section (F). Jefferson filed his motion for change of judge in 2009, so we refer to the version of the rule in effect at that time.

5

(3) Failure of Nonmoving Party . . . to Strike. If the nonmoving party . . . fails to strike within the time required by subsection (2), the moving party shall have seven (7) days from that time to make the final strike.

(4) Failure of Moving Party to Strike. If the moving party fails to strike under either subsection (2) or (3) within the time limits required by those subsections, the judge who submitted the panel shall resume jurisdiction of the case.

(Emphasis added).

Jefferson's sole contention on this issue is that the post-conviction court erred when it found that he had not timely filed his first motion to strike. But we need not address that issue because Jefferson does not challenge the court's finding that he did not move the court to strike a second time after the State had failed to move to strike a panel member. Trial Rule 79(F)(4) clearly required Jefferson to move to strike within seven days after the State's motion to strike was due, but not filed. Because Jefferson did not so move, the post-conviction court properly resumed jurisdiction of the case. See id.

**Issue Two: Assistance of Trial Counsel**

Jefferson also contends that he was denied the effective assistance of trial counsel. There is a strong presumption that counsel rendered effective assistance and made all significant decisions in the exercise of reasonable professional judgment, and the burden falls on the defendant to overcome that presumption. Gibson v. State, 709 N.E.2d 11, 13 (Ind. Ct. App. 1999), trans. denied. To make a successful ineffective assistance claim, a defendant must show that: (1) his attorney's performance fell below an objective standard of reasonableness as determined by prevailing professional norms; and (2) the lack of reasonable representation prejudiced him. Mays v. State, 719 N.E.2d 1263, 1265

6

(Ind. Ct. App. 1999) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)), trans. denied.

Deficient performance is representation that fell below an objective standard of reasonableness by the commission of errors so serious that the defendant did not have the "counsel" guaranteed by the Sixth Amendment. Roberts v. State, 894 N.E.2d 1018, 1030 (Ind. Ct. App. 2008), trans. denied. Consequently, our inquiry focuses on counsel's actions while mindful that isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render counsel's representation ineffective. Id. Even if a defendant establishes that his attorney's acts or omissions were outside the wide range of competent professional assistance, he must also establish that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. See Steele v. State, 536 N.E.2d 292, 293 (Ind. 1989). If we can dismiss an ineffective assistance claim on the prejudice prong, we need not address whether counsel's performance was deficient. Helton v. State, 907 N.E.2d 1020, 1023 (Ind. 2009).

Jefferson's sole contention is that Patrick Baker, one of Jefferson's three trial attorneys, provided ineffective assistance in handling pretrial matters, including a motion to suppress evidence. But Jefferson neither contends nor provides cogent argument to show that but for Baker's alleged errors there is a reasonable probability that the result of the proceeding would have been different. See Steele, 536 N.E.2d at 293. Without any showing of prejudice, we cannot say the post-conviction court erred when it denied Jefferson's petition on this issue. See Helton, 907 N.E.2d at 1023.

7

**Issue Three:  Assistance of Appellate Counsel**

Jefferson also asserts that he received ineffective assistance from his appellate counsel.  A claim of ineffective assistance of counsel must satisfy two components.  Strickland v. Washington, 466 U.S. 668 (1984).  First, the defendant must show deficient performance:  representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the "counsel" guaranteed by the Sixth Amendment.  Id. at 687-88.  Second, the defendant must show prejudice:  a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different.  Id. at 694.

More specifically, Jefferson avers that his appellate counsel rendered ineffective assistance when she did not raise two particular issues on appeal.  As our supreme court has explained:

> To show that counsel was ineffective for failing to raise an issue on appeal thus resulting in waiver for collateral review, the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential.  To evaluate the performance prong when counsel waived issues upon appeal, we apply the following test:  (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are "clearly stronger" than the raised issues.  If the analysis under this test demonstrates deficient performance, then we examine whether "the issues which appellate counsel failed to raise[] would have been clearly more likely to result in reversal or an order for a new trial."  Further, we must
>
>> consider the totality of an attorney's performance to determine whether the client received constitutionally adequate assistance and should be particularly sensitive to the need for separating the wheat from the chaff in appellate advocacy, and should not find deficient performance when counsel's choice of some issues over others was reasonable in

> light of the facts of the case and the precedent available to counsel when that choice was made.
>
> Ineffective assistance is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal. One reason for this is that the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel.

Reed v. State, 856 N.E.2d 1189, 1195-96 (Ind. 2006) (citations, omissions, alterations, and some quotations omitted). With those standards in mind, we turn to Jefferson's contentions on appeal.

## Criminal Rule 4

Jefferson first contends that his appellate counsel was ineffective when she did not raise the issue of the trial court's denial of his motions for discharge under Indiana Criminal Rule 4. But, again, Jefferson has not demonstrated that but for his appellate counsel's alleged error there is a reasonable probability that the result of the proceeding would have been different. See Steele, 536 N.E.2d at 293. Jefferson merely states that his claim was "meritorious" and that he was prejudiced by his appellate counsel's performance "because this issue has never been reviewed by an appellate court." Appellant's Brief at 18.

Moreover, Jefferson has not demonstrated that the Criminal Rule 4 issue was "clearly stronger" than the issues raised by his appellate counsel. See Reed, 856 N.E.2d at 1195. As the State points out, "[a]lthough this case pended for several years, less than 365 days of that time is delay that was not caused or acquiesced in by Petitioner." Appellee's Brief at 22. Jefferson maintains that 310 days of delay due to a codefendant's motions to continue should not be attributable to him for purposes of Criminal Rule 4.

9

But in <u>Nicholson v. State</u>, 768 N.E.2d 1043, 1047 (Ind. Ct. App. 2002), we addressed the

defendant's same argument on this issue as follows:

> With respect to Nicholson's motion brought pursuant to Crim. R. 4(C), he contends that he made a "proper and timely motion to dismiss because of the delay not attributed to himself, his counsel, or trial congestion, but subsequent continuances sought by the state and by his co-Defendant." Crim. R. 4(C) provides that a defendant must be tried within one year from the date of arrest or of the filing of the criminal charge, whichever is later, except where a continuance was obtained on his behalf, or where the delay was caused by the defendant. Essentially, Nicholson argues that he should not be held responsible for Baker's multiple motions for continuance.
>
> However, Nicholson did not object to the consolidation of the trials, nor did he move to separate his trial from Baker's trial. Further, he did not object to any of the continuances Baker sought. Ind. Code § 35-34-1-11(b) provides that "upon motion of the defendant or the prosecutor, the court shall order a separate trial of defendants whenever the court determines that a separate trial is necessary to protect a defendant's right to a speedy trial . . . ." Thus, where one defendant's motion for continuance takes the trial outside the time limits set by his co-defendant's speedy trial motion and the co-defendant does not move for a separate trial, the denial of a motion to discharge is not error. <u>Young v. State</u>, 176 Ind. App. 32, 373 N.E.2d 1108, 1110 (1978).
>
> Had Nicholson felt that his right to obtain a trial within the parameters of Crim. R. 4 was being violated, he could have requested a separation of the trials. In light of his failure to do so and his failure to object to Baker's multiple motions for continuance, the trial court did not err when it denied Nicholson's motion to dismiss.

Here, Jefferson did not request a separation of trials, and he did not object to his

codefendant's multiple motions for continuance. Accordingly, he has not shown that,

had his appellate counsel raised this issue on appeal, this court would have reversed his

conviction on that ground. The post-conviction court did not err when it denied

Jefferson's petition on this issue.

10

**Probable Cause Affidavit**

Next, Jefferson contends that his appellate counsel was ineffective when she did not effectively assert the issue of the allegedly "faulty" probable cause affidavit. Appellant's Brief at 20. On direct appeal, this court found that Jefferson had waived his argument that the probable cause affidavit did not comply with Indiana Code Section 35-33-5-2. Jefferson I, 891 N.E.2d at 83 n.3. In this appeal from the denial of his post-conviction petition, Jefferson maintains that had his appellate counsel presented cogent argument to show that the probable cause affidavit was "faulty" because it lacked an "oath and affirmation," his appeal would have been successful. Appellant's Brief at 20-21. In essence, Jefferson argues that had his appellate counsel supported this issue with cogent argument, he would have prevailed on direct appeal.

But Jefferson does not explain in this appeal from the denial of his post-conviction petition how the probable cause affidavit was defective. He does not, for instance, direct us to any authority to support his assertion that the affidavit was defective because it lacked an oath or affirmation. Jefferson merely describes this issue as "meritorious" without demonstrating that it is so. Id. at 21. The post-conviction court did not err when it denied Jefferson's petition on this issue.

**Issue Four: Motion for Discharge**

Finally, Jefferson contends that the post-conviction court erred when it denied his petition on the issue of the trial court's denial of his motion for discharge under Criminal Rule 4. Because this issue was known and available on direct appeal but not raised, Jefferson's claim is not available as a freestanding claim of fundamental error on a

11

petition for post-conviction relief. See Hinesley v. State, 999 N.E.2d 975, 988 (Ind. Ct. App. 2013). Freestanding claims of fundamental error are not available in post-conviction proceedings. Id. The post-conviction court did not err when it denied Jefferson's petition on this issue.

Affirmed.

VAIDIK, C.J., and BROWN, J., concur.